# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A/ BLUE CROSS AND BLUE SHIELD OF LOUISIANA, and HMO LOUISIANA, INC., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JANSSEN BIOTECH, INC., JANSSEN ONCOLOGY, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, and BTG INTERNATIONAL LIMITED, <br><br> Defendants. | Case No. 1:19-cv-00474-LMB-JFA |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## JOINT MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND .............................................................................................................. 3

LEGAL STANDARD........................................................................................................ 6

ARGUMENT .................................................................................................................. 7

   A.   This Case "Might Have Been Brought" In The District Of New Jersey ............................. 7

   B.   The Balancing Of Relevant Factors Strongly Favors Transfer.......................................... 7

      1.   Plaintiff's Choice Of Venue ...................................................................................... 7

      2.   Witness Convenience And Access .......................................................................... 10

      3.   Convenience Of The Parties.................................................................................. 13

      4.   Interest Of Justice................................................................................................ 14

CONCLUSION............................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Mktg. Sys., LLC v. Delhaiz Am., LLC*,
No. 2:15CV74, 2015 WL 12806533 (E.D. Va. July 31, 2015) ................................................8

*Bluestone Innovations, LLC v. LG Elecs., Inc.*,
940 F. Supp. 2d 310 (E.D. Va. 2013) ..............................................................................13, 16

*BTG Int'l Ltd. v. Amneal Pharm. LLC*,
No. 19-1147, 2019 WL 2094302 (Fed. Cir. May 14, 2019) ....................................................5

*Byerson v. Equifax Info. Servs., LLC*,
467 F. Supp. 2d 627 (E.D. Va. 2006) ............................................................................7, 8, 14

*Finmeccanica S.p.A. v. Gen. Motors Corp.*,
No. 1:07CV794 (JCC), 2007 WL 4143074 (E.D. Va. Nov. 19, 2007)...............................6, 10

*High Point SARL v. Sprint Nextel Corp.*,
No. 2:08CV625, 2009 WL 10671368 (E.D. Va. May 18, 2009)............................................17

*Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*,
227 F. Supp. 2d 581 (E.D. Va. 2002) ....................................................................................7

*Jaffee v. LSI Corp.*,
874 F. Supp. 2d 499 (E.D. Va. 2012) ...................................................................................16

*King v. Corelogic Credco, LLC*,
No. 3:17CV761, 2018 WL 2977393 (E.D. Va. June 13, 2018)................................................8

*Koh v. Microtek Int'l, Inc.*,
250 F. Supp. 2d 627 (E.D. Va. 2003) ...............................................................................6, 13

*Kukich v. Electrolux Home Prods., Inc.*,
No. CV ELH-16-3412, 2017 WL 345856 (D. Md. Jan. 24, 2017)...........................................8

*Newbauer v. Jackson Hewitt Tax Serv. Inc.*,
No. 2:18CV679, 2019 WL 1398172 (E.D. Va. Mar. 28, 2019) .............................................15

*Phillips v. Uber Techs., Inc.*,
No. 3:15-CV-544-JAG, 2016 WL 165024 (E.D. Va. Jan. 13, 2016) .......................................9

*Pragmatus AV, LLC v. Facebook, Inc.*,
769 F. Supp. 2d 991 (E.D. Va. 2011) ...................................................................................17

ii

*Seaman v. IAC/InterActiveCorp, Inc.*,
  No. 3:18-CV-401, 2019 WL 1474392 (E.D. Va. Apr. 3, 2019) ...............................................14

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ..............................................................................................................6

*Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*,
  791 F.3d 436 (4th Cir. 2015) .............................................................................................6

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ............................................................................................................6

**Statutes**

15 U.S.C. § 22......................................................................................................................7

28 U.S.C. § 1404(a) ........................................................................................................1, 6

35 U.S.C. § 112....................................................................................................................4

Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., and Janssen Research & Development, LLC (collectively, "Janssen" or "Janssen Defendants"),[1] along with Defendant BTG International Limited ("BTG" and collectively with Janssen, "Defendants"), respectfully move the Court for an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the United States District Court for the District of New Jersey.

Plaintiffs Louisiana Health Service & Indemnity Company, d/b/a/ Blue Cross and Blue Shield of Louisiana, and HMO Louisiana, Inc. (collectively, "Plaintiffs"), allege that Defendants brought baseless patent claims in the District of New Jersey for no reason other than to delay entry of generic competitors to Janssen's anti-cancer drug Zytiga. *See* Complaint ("Compl."), ECF No. 1, ¶¶ 166–69, 186–88, 225–48. United States District Court Judge Kevin McNulty presided over that litigation ("the Patent Litigation") for three years, addressing a wide range of complex patent questions. The Patent Litigation culminated in a two-week bench trial after which Judge McNulty issued a thorough, 70-page opinion in which he found infringement, but also—ruling *against* Defendants (who were Plaintiffs there)—found that the patent was obvious. *Id.*; *see also* Declaration Of Jerome A. Swindell In Support Of Defendants' Joint Motion To Transfer Venue ("Swindell Decl."), Exhibit A, *BTG Int'l, Ltd. et al. v. Amneal Pharm. LLC, et al.*, No. 2:15-cv-05909-KM-JBC (D.N.J. Oct. 31, 2018) (McNulty J., Opinion). Plaintiffs here allege that the entire District of New Jersey proceeding was a "sham." Compl. ¶¶ 101, 169, 251, 592, 793. To the extent any court will be asked to declare that Judge McNulty wasted three years presiding over an

---

[1] The Complaint alleges various actions by various defendants, often without attribution. As the particulars of who did what are not germane for purposes of this motion, for the sake of simplicity we refer to the Janssen Defendants generically without attributing any particular action to any particular entity.

objectively baseless lawsuit, principles of equity, comity, efficiency, and the interests of justice strongly suggest that decision be committed to Judge McNulty.

Transfer is also warranted because the vast majority of the relevant events, evidence, and witnesses occurred in, are found in, and reside in New Jersey. Plaintiffs allege a conspiracy formulated and executed by the Janssen Defendants from various Johnson & Johnson company offices in New Jersey. Likely relevant documents including patent-related files, marketing materials, financial data, sales records, communications, and so forth are all located in New Jersey. And the current and former Janssen employees likely to be called as witnesses largely live in and about the District of New Jersey. Conversely, the Janssen Defendants are not aware of any relevant witness or evidence to be found in this District.[2] Plaintiffs, too, are strangers to this forum. And indeed, the only nexus between this case and the Eastern District of Virginia is the presence of the United States Patent and Trademark Office ("PTO"), which this Court has previously recognized as an insufficient basis to resist transfer.

Recognizing this strong nexus to the District of New Jersey, a District Court in the Northern District of California recently ordered the transfer of a factually similar False Claims Act *qui tam* lawsuit to New Jersey. *See* Swindell Decl., Exhibit C, Order Granting Motion To Transfer Venue, *United States of America et al. v. Janssen Biotech, Inc. et al.*, No: 2:19-cv-12107-KM-JBC (D.N.J. April 29, 2019), ECF No. 51. In that case, the Relator similarly alleges that the Janssen Defendants duped the PTO into issuing a patent and pursued sham litigation in the District of New Jersey to

---

[2] BTG, which owns rights to the patent asserted in the Patent Litigation, is a UK-based specialist healthcare company with no offices or employees anywhere in the United States, let alone in this District. *See* Affidavit Of Paul Mussenden In Support Of Defendants' Motion To Transfer Venue ("Mussenden Aff.") at ¶ 5. Accordingly, to the extent documents in BTG's possession, custody, and control are relevant in this litigation, they are located in the United Kingdom.

clear the market of competition.  On May 6, 2019, the District of New Jersey assigned that case to Judge McNulty.

For all the foregoing reasons, and the reasons discussed below, transfer of this matter to the District of New Jersey is also appropriate.

## BACKGROUND

When used in combination with prednisone, Zytiga is a life-extending prescription drug that treats advanced prostate cancer.

Zytiga's active compound, abiraterone acetate, was originally patented by British Technology Group in 1997 under U.S. Patent No. 5,604,213 ("the '213 Patent").  Compl. ¶ 109. By itself, however, abiraterone acetate never enjoyed any meaningful commercial success.  BTG initially licensed it to Boehringer Ingelheim, a large pharmaceutical company, which surrendered its license and did not proceed with abiraterone acetate following some preliminary trials.  No other major pharmaceutical company showed any interest in abiraterone acetate and it remained unpursued until a small biotech company, Cougar Biotechnology, licensed it in 2004.  *See* Swindell Decl., Ex. A, *BTG Int'l, Ltd. et al.*, No. 2:15-cv-05909-KM-JBC, at 10, 49.  Dr. Johann de Bono, an oncologist and co-inventor of the patent at issue, hypothesized that abiraterone acetate may be more efficacious when co-administered with a glucocorticoid steroid, such as prednisone.  *Id.* at 7.  Subsequent clinical trials bore out his hypothesis.  *Id.* at 10–16.

Johnson & Johnson acquired Cougar in 2009, and Janssen launched Zytiga in 2011, after confirming that abiraterone acetate has particularly efficacious and extended anti-cancer properties when co-administered with prednisone.  Compl. ¶¶ 3, 103–10, 122–25.  Considering this discovery to be novel and valuable, Janssen pursued a second "method" patent on the combination of abiraterone acetate and prednisone.  Compl. ¶¶ 111, 127.  During multiple rounds of discussions

and submissions, the PTO examiner concluded that the prior art taught the proposed combination. Compl. ¶¶ 111–21, 127–44.  However, in light of Zytiga's commercial success, she ultimately agreed with the Janssen Defendants that "secondary considerations" demonstrated that the proposed method was non-obvious.  Compl. ¶¶ 148–50, 161.  The PTO issued the requested patent, U.S. Patent No. 8,822,438 ("the '438 Patent") on September 2, 2014.  Compl. ¶ 161.

Plaintiffs allege that Defendants violated the Sherman Act, the Clayton Act, and various state antitrust and consumer protection laws by asserting the '438 Patent against generic drug manufacturers attempting to introduce generic abiraterone acetate products.  *See generally* Compl. ¶¶ 277–793.  Specifically, Plaintiffs allege that Defendants obtained the '438 Patent only by concealing from the PTO examiner the existence of the '213 Patent for abiraterone acetate, which "blocked" the introduction of any competing product and was, Plaintiffs claim, the real cause of Zytiga's commercial success.  Compl. ¶¶ 8–9, 151–62.[3]

With the '438 Patent in hand, Defendants filed Hatch-Waxman patent infringement suits against several generic drug manufactures that had submitted Abbreviated New Drug Applications ("ANDA"), indicating their intent to launch competing and potentially infringing generic abiraterone acetate products.  *See* Second Amended Complaint, *BTG Int'l, Ltd. et al. v. Amneal Pharm. LLC, et al.*, No. 2:15-cv-05909-KM-JBC (D.N.J.), ECF No. 274.  Around this same time, several generic manufacturers pursued *inter partes* challenges to the '438 Patent before the Patent Trial and Appeal Board ("PTAB").  In early 2018, the PTAB invalidated the '438 Patent on obviousness grounds.  Compl. ¶¶ 200–24.

---

[3] As this matter proceeds, whether here or in New Jersey, the Janssen Defendants will contest vigorously Plaintiffs' inaccurate claims.  The so-called "blocking patent" was, in fact, repeatedly disclosed to and acknowledged by the patent examiner.  Moreover, abiraterone acetate was available for license prior to Cougar Technologies taking a license in 2004, such that the '213 Patent did not "block" anything.

Separately, the Patent Litigation culminated in a bench trial from July 23, 2018 to August 2, 2018.  After trial, Judge McNulty issued a 70-page opinion in which he rejected the generic manufacturers' defenses of non-infringement and lack of written description under 35 U.S.C. § 112, but agreed with the generic manufacturer defendants that the prior art taught the combination of abiraterone acetate and prednisone.  *See generally* Swindell Decl., Ex. A, *BTG Int'l, Ltd. et al v. Amneal Pharm. LLC, et al.*, No. 2:15-cv-05909-KM-JBC (D.N.J. Oct. 31, 2018).  Judge McNulty recognized that Zytiga had enjoyed commercial success and that there was evidence that Zytiga addressed an unmet need.  *Id.* at 48, 50.  However, on balance, he concluded, "the evidence favors a conclusion of obviousness." *Id.* at 51.

Judge McNulty's final decision and the PTAB decisions were consolidated for appellate review by the United States Court of Appeals for the Federal Circuit.  *See* Plaintiffs' Notice of Appeal, *BTG Int'l, Ltd. et al. v. Amneal Pharm. LLC, et al.*, No. 2:15-cv-05909-KM-JBC (D.N.J. Oct. 31, 2018), ECF No. 573.  The Federal Circuit held oral argument on the appeal earlier this year and subsequently issued an opinion that affirmed the PTAB's decision and dismissed the appeal from the district court as moot.  *See* Swindell Decl., Exhibit B, *BTG Int'l Ltd. v. Amneal Pharm. LLC*, No. 19-1147, 2019 WL 2094302, at *1 (Fed. Cir. May 14, 2019).  Janssen's deadline for filing a petition on rehearing is May 28, 2019, and any petition for a writ of *certiorari* to the Supreme Court is due on August 12, 2019.  Janssen and BTG are presently considering their rights to further appellate review and any remand arising from such proceedings would return the federal court litigation to Judge McNulty.

Plaintiffs now assert that Defendants knew they "could never ultimately win in the courts" and instead brought the Patent Litigation for the sole purpose of triggering the Hatch-Waxman "30-month stay" to further delay generic entry of abiraterone acetate.  Compl. ¶¶ 10, 166–69, 186–

88, 225–48.  Plaintiffs claim that the three-year long litigation was so frivolous that it constituted baseless, "sham" litigation.  Compl. ¶¶ 78–79, 101, 169, 251, 592, 793.

## LEGAL STANDARD

Pursuant to § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Transfer pursuant to § 1404(a) is appropriate to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

In considering a motion to transfer, courts apply a two-step analysis based on an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).  First, the Court must determine "whether the claims might have been brought in the transferee forum."  *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).  Second, the Court must determine "whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum."  *Id.*  To apply this second prong, the Fourth Circuit has established a four-factor balancing test: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).  Movants bear the burden of showing transfer is proper.  *See Finmeccanica S.p.A. v. Gen. Motors Corp.*, No. 1:07CV794 (JCC), 2007 WL 4143074, at *3 (E.D. Va. Nov. 19, 2007).

## ARGUMENT

Transfer of this matter to the District of New Jersey pursuant to § 1404 is appropriate.  This case could have been brought in New Jersey as an initial matter, and the Fourth Circuit's balancing test factors, most significantly "the convenience of parties and witnesses" and "the interests of justice," overwhelmingly favor transfer to that District.

### A.  This Case "Might Have Been Brought" In The District Of New Jersey

This case indisputably could have been brought in New Jersey.  "Any suit, action or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business."  15 U.S.C. § 22.  Defendant Janssen Research & Development, LLC is organized under the laws of the State of New Jersey, with its principal place of business in Raritan, New Jersey.  The other Janssen Defendants also transact business in the State of New Jersey.  Defendant BTG is a foreign corporation, Compl. ¶ 25, and can be sued in the District Court for New Jersey.  *See* Mussenden Aff. at ¶ 5.  Thus, venue is proper in New Jersey.

### B.  The Balancing Of Relevant Factors Strongly Favors Transfer

Applying the factors articulated by the Fourth Circuit, there is no reasonable question that "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer" to New Jersey.  *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 631–32 (E.D. Va. 2006).

#### 1.  Plaintiff's Choice Of Venue

This first prong examines the plaintiff's chosen forum and considers whether (i) the plaintiff has selected its "home" forum, and (ii) the cause of action and/or the underlying events arose or took place within that district.  *See, e.g., Intranexus, Inc. v. Siemens Med. Sols. Health*

*Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002) ("the weight accorded to a plaintiff's choice 'varies in proportion to the connection between the forum and the cause of action.'").

Ordinarily, a plaintiff's choice of forum is entitled to substantial weight.  *Byerson*, 467 F. Supp. 2d at 633.  However, "[w]hen 'the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight.'" *King v. Corelogic Credco, LLC*, No. 3:17CV761, 2018 WL 2977393, at \*4 (E.D. Va. June 13, 2018); *see also Advanced Mktg. Sys., LLC v. Delhaiz Am., LLC*, No. 2:15CV74, 2015 WL 12806533, at \*2 (E.D. Va. July 31, 2015) (giving less weight where a plaintiff's "claims bear little or no relation to the chosen forum").  Additionally, in a putative class action, the representative plaintiff's choice of forum "is afforded little weight."  *Byerson*, 467 F. Supp. 2d at 633.  Because there are numerous potential plaintiffs in a class action, with each plaintiff "possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim," the named plaintiff's choice of forum is not given great deference.  *Id.*  This is especially true where the named plaintiffs of the class action are not even at home in the chosen district.  *See id.*; *cf. Kukich v. Electrolux Home Prods., Inc.*, No. CV ELH-16-3412, 2017 WL 345856, at \*7 (D. Md. Jan. 24, 2017).

Here, Plaintiffs concede that they are strangers to this District.  As residents of Louisiana, they are not "at home" in Virginia.  *See* Compl. ¶¶ 19–20.  In fact, Plaintiffs here are serial plaintiffs, often represented by the same lawyers in actions in multiple jurisdictions across the country.[4]  Plaintiffs can claim no special or personal connection that supports litigating in the Eastern District of Virginia.

---

[4] In the recent past, Plaintiff Louisiana Health Service & Indemnity Company has filed antitrust cases against pharmaceutical companies in at least five different districts.  *See, e.g.*, *La. Health*

Additionally, most of the "operative events in the lawsuit" occurred in New Jersey, not in Virginia. *See, e.g.*, *Phillips v. Uber Techs., Inc.*, No. 3:15-CV-544-JAG, 2016 WL 165024, at *2 (E.D. Va. Jan. 13, 2016).  One of the three named Janssen Defendants, Janssen Research & Development, LLC, is a New Jersey corporation located in New Jersey, Compl. ¶ 23, and, as detailed in the attached Declaration of Jerome Swindell, each of the Janssen Defendants conducts significant business in the District of New Jersey and each is a subsidiary of Johnson & Johnson, a similarly New Jersey-based company located in New Brunswick, *see* Swindell Decl. ¶¶ 3–6. Moreover, nearly all of the business operations relevant to Plaintiffs' allegations are located in, or very close to, New Jersey.  *See generally* Swindell Decl.  Plaintiffs allege Defendants misled the patent examiner during the prosecution of  the '438 Patent.  Compl. ¶¶ 151, 157.  The '438 Patent was prosecuted from Johnson & Johnson's office(s) in New Brunswick, New Jersey.  Swindell Decl. ¶ 24.  Plaintiffs allege Defendants then used the '438 Patent to clear the field and secure anticompetitive pricing for Zytiga.  *See, e.g.*, Compl. ¶ 10.  The commercial pricing, sale, and marketing of Zytiga was handled by Johnson & Johnson operations located in Titusville, New Jersey or neighboring Horsham, Pennsylvania.  *See* Swindell Decl. ¶¶ 32–37.

Most significantly, Plaintiffs allege that Defendants pursued three years of sham patent infringement litigation that Defendants "knew they could never ultimately win."  *See* Compl. ¶¶ 10, 251.  Those lawsuits were prosecuted in the District of New Jersey and were directed by

*Serv. & Indem. Co. v. AbbVie, Inc.*, No. 1:19-cv-02904 (N.D. Ill. Apr. 30, 2019); *La. Health Serv. & Indem. Co. v. Allergan, Inc.*, No. 1:18-cv-01430 (E.D.N.Y. Mar. 8, 2018) (transferred from the M.D. La.); *La. Health Serv. & Indem. Co. v. Teligent, Inc.*, No. 2:17-cv-01879 (E.D. Pa. Apr. 25, 2017); *La. Health Serv. & Indem. Co. v. Boehringer Ingelheim Pharma GMBH & Co. KG*, No. 3:15-cv-00964 (D. Conn. Jun. 23, 2015); *La. Health Serv. & Indem. Co. v. Endo Health Sols., Inc.*, No. 1:14-cv-10289 (N.D. Ill. Dec. 23, 2014) (transferred from the M.D. La.); *La. Health Serv. & Indem. Co. v. Astellas Pharma US, Inc.*, No. 11-cv-12326 (D. Mass. Dec. 28, 2011).

Johnson & Johnson lawyers and officials located in New Brunswick, New Jersey.  *See* Swindell Decl. ¶ 11.

The only nexus between this lawsuit and the Eastern District of Virginia is the presence of the PTO, including the PTAB, in Alexandria, Virginia.  But these federal offices were merely the terminus for alleged misconduct that occurred in New Jersey in the first instance.  Plaintiffs have alleged no independent, relevant activity in Virginia.  *See Finmeccanica S.p.A.*, 2007 WL 4143074, at *4 (finding "no affirmative act actually took place" in Virginia where patent applications were mailed in Michigan).  Moreover, the location of the PTO does not create a substantial connection to this forum.  Indeed, "[c]ourts in this District have had no qualms about transferring patent cases to other jurisdictions despite the location of the USPTO."  *Id.*  Were the location of the PTO or PTAB given greater weight, the Eastern District of Virginia would be overrun with patent-related cases, artificially and unnecessarily clogging the District's docket.  Thus, this factor does not weigh against transfer.

### 2.  Witness Convenience And Access

The second consideration, the convenience of witnesses and access to evidence, weighs strongly in favor of transfer.  Unsurprisingly, this factor can "often [be] the most important factor in determining whether transfer is appropriate."  *Id.* at *5.  Here, party and non-party witnesses[5] would be greatly convenienced by a transfer.

As described in detail in the accompanying declaration, Plaintiffs' allegations likely implicate current and former employees working for a number of Johnson & Johnson entities at different locations in New Jersey or just across the river in nearby Pennsylvania.  For example, a

---

[5] Due to the early stage of the litigation, Defendants' identification of witnesses is preliminary and should in no way be construed as a limitation on or waiver of any discovery or any objection to discovery.

multidisciplinary compound development team from Janssen's research and development arm provided pre-commercial support to Zytiga and is located primarily in Raritan, New Jersey. Swindell Decl. ¶¶ 19–20.  The development team would include individuals who made strategic decisions regarding the patenting, development, and entry-level marketing and branding strategy of Zytiga.  Swindell Decl. ¶¶ 20–23.  Among these individuals are former compound development team leaders such as Michael Meyers, Bob Charnas, and Michael Smith, some of whom are no longer with Janssen but all of whom are located in either New Jersey or the greater New York City area.  Swindell Decl. ¶ 20.  Similarly, Zytiga's development team included a strategic marketing function, tasked with assessing the value proposition of various patient populations and designing market-entry strategies for Zytiga, operating out of Raritan, New Jersey.  Swindell Decl. ¶ 22. Many of the individuals who served in that capacity continue to reside in either New Jersey or neighboring states Pennsylvania and New York.  Swindell Decl. ¶ 22.  Communications and finance work is also done in the New Jersey and Pennsylvania area, with relevant individuals being found at those locations.  Swindell Decl. ¶¶ 28–29.  Additionally, many company lawyers, including patent counsel, are located in New Brunswick, New Jersey.  Swindell Decl. ¶¶ 24–26.

Following its launch, much of the product support for Zytiga transitioned to Janssen's commercial business, which operates seamlessly across Janssen's Titusville, New Jersey and Horsham, Pennsylvania campuses.  Swindell Decl. ¶¶ 30–31.  Commercial marketing and sales is managed by two distinct groups that work collaboratively at the leadership level to align on overall strategic decision-making.  Swindell Decl. ¶ 32.  While one group markets to individual prescribers such as physicians or oncologists, the other markets to payer-entities such as health care organizations.  Swindell Decl. ¶¶ 33, 35.  Among those individuals are Cynthia Jones, Group Product Director for Zytiga, working out of both the Titusville and Horsham locations, as well as

11

Louis Langas, former Group Product Director for Zytiga, who resides in New Jersey.  Swindell Decl. ¶¶ 33–34.  Either of these individuals are knowledgeable about marketing and commercial strategy for Zytiga, including the product's commercial success.   Dimitry Gitarts, of the commercial strategic pricing group, works closely with the commercial sales and marketing groups to evaluate pricing in the context of market share.  Swindell Decl. ¶ 36.  Mr. Gitarts could testify to pricing strategy in response to market conditions, including the entry of generic competition. Swindell Decl. ¶ 36.

Additionally, the actual contracting with managed care clients, such as pharmacy benefit managers, health plans, and HMOs, was handled by Johnson & Johnson Health Care Systems, another Johnson & Johnson subsidiary, located in Piscataway, New Jersey.  Swindell Decl. ¶ 38. For example, Bill Condon was responsible for Zytiga contracting with managed care customers and could testify to those contracting strategies.  Swindell Decl. ¶ 38.

Finance personnel supporting Zytiga are located within the Titusville and Horsham campuses.  Swindell Decl. ¶ 39.  For example, Finance Manager Michelle Small could testify regarding the revenues, costs, and expenses associated with the Zytiga product.  Swindell Decl. ¶ 39. Other finance individuals that could speak to the gross and net calculations of Janssen pharmaceutical products include Shelly Shadle, located in Horsham, Pennsylvania.  Swindell Decl. ¶ 39.  Additionally, regulatory work is handled largely out Janssen's Titusville campus, which is where Le Chung, the Regulatory Liaison for Janssen, is located.  Ms. Chung could speak to the Janssen Defendants' interactions with the U.S. Food and Drug Administration ("FDA")  and Zytiga's FDA approval process.  Swindell Decl. ¶ 40.

These witnesses' testimony could bear directly on the gravamen of Plaintiffs' claims. And convenience for these witnesses favors transfer because "greater weight" is accorded to the inconvenience for witnesses whose testimony is "central to a claim." *Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 317–18 (E.D. Va. 2013). Conversely, the Janssen Defendants are not aware of any relevant employees located in Virginia, who would have information or documents relevant to any claims brought by Plaintiff. In addition, any documents and other sources of proof relevant to the issues in this litigation would be located at Johnson & Johnson facilities in New Jersey, including Johnson & Johnson headquarters in New Brunswick.

Because the likely primary witnesses and evidence are located in New Jersey, this factor weighs in favor of transfer.

### 3. Convenience Of The Parties

This factor, which looks to "the convenience to the parties and witnesses in litigating in either venue," also favors transfer. *Koh*, 250 F. Supp. 2d at 636. In applying this factor, courts examine whether (1) the original forum is inconvenient for defendants and (2) the plaintiff will not be substantially inconvenienced by the transfer. *See id.* In this case, both considerations weigh in favor of the District of New Jersey.

First, the Eastern District of Virginia is an inconvenient forum for Defendants, who have no relevant material connections to the District. As discussed *supra*, the Janssen Defendants, and indeed many related Johnson & Johnson operations, are located in and about New Jersey, and the relevant witnesses are located in New Jersey. No defendant is incorporated in or has a principal place of business in Virginia, nor is any relevant witness located in Virginia.

Second, Plaintiffs will not be inconvenienced by or suffer any conceivable prejudice from the transfer because Plaintiffs themselves are not located in Virginia and are, instead, located far

away in Louisiana.  Because Plaintiffs have opted to litigate in a foreign district, away from their "home," New Jersey is no more of an inconvenience than Virginia.[6]  For instance, it is in the same time zone and on the same coast as Virginia.  Meanwhile, the District of New Jersey is far more convenient for Defendants.

This factor squarely favors transfer.  *See Seaman v. IAC/InterActiveCorp, Inc.*, No. 3:18-CV-401, 2019 WL 1474392, at *7 (E.D. Va. Apr. 3, 2019) (favoring transfer where Virginia is not plaintiff's home forum, plaintiff has not identified how he would be inconvenienced by a transfer, and a transfer would be "significantly more convenient for the Defendants").

### 4.  Interest Of Justice

The last factor, the interest of justice, "encompasses public interest factors aimed at 'systemic integrity and fairness,'" and "may be decisive in ruling on a transfer motion."  *Byerson*, 467 F. Supp. 2d at 635.  "Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments."  *Id.*  Both factors are implicated here as transfer to New Jersey will promote both economy and consistency.  Accordingly, the interest of justice strongly supports transfer.

As noted above, the District of New Jersey, and Judge McNulty specifically, is already presiding over two related actions.  First, the underlying, purportedly sham Patent Litigation—the express subject of the instant lawsuit—was litigated before Judge McNulty, and jurisdiction on remand, if required, from any further appellate review lies in the District of New Jersey.  Second, the *qui tam* action recently transferred from the Northern District of California, *United States ex rel. Silbersher v. Janssen Biotech, Inc. et al.*, has been assigned by the District of New Jersey to

---

[6] Likewise, New Jersey is no more of an inconvenience for BTG, which is based in the United Kingdom.  *See* Mussenden Aff. at ¶ 2.

Judge McNulty.  *See* Swindell Decl., Ex. C, Order Granting Motion to Transfer Venue, *United States of America et al. v. Janssen Biotech, Inc. et al.*, No: 2:19-cv-12107-KM-JBC (D.N.J. April 29, 2019), ECF No. 51.  These existing assignments strongly counsel in favor of transferring this third related case, arising out of the same nucleus of operative fact, to New Jersey as well.[7]  *See, e.g.*, *Newbauer v. Jackson Hewitt Tax Serv. Inc.*, No. 2:18CV679, 2019 WL 1398172, at *14 (E.D. Va. Mar. 28, 2019) ("the pendency of a related action in the transferee forum and the potential for consolidating the related actions weigh in favor of transfer").

First, transfer will promote judicial economy.  During the Patent Litigation, Judge McNulty became intimately familiar with the development of Zytiga, the prosecution history of the relevant patent in the PTO, the prior art, the evidence relating to secondary considerations of non-obviousness, and the marketing, sales, and commercial success of Zytiga.  Judge McNulty is familiar with, and has issued a lengthy opinion addressing, the underlying patent, the patent prosecution record, and other related considerations.  All of these subjects are covered—at varying levels of detail—in Plaintiffs' lengthy complaint, are integral to Plaintiffs' antitrust theory, and will be central to this litigation.  Judicial economy supports a transfer.

Second, transfer will reduce the opportunity for inconsistent judgments or findings of fact.  The Patent Litigation itself remains pending on appeal, as the time for further review has not yet expired.  Any remand resulting from subsequent appellate review would return the lawsuit to the District of New Jersey for further proceedings.  Transferring the instant matter to the District of

---

[7] Defendants are aware of the existence of two additional class actions filed recently in the Eastern District of Virginia.  *See* Complaint, *Iron Workers Dist. Council (Philadelphia and Vicinity) Health Benefit Plan v. Janssen Biotech, Inc. et al.*, No. 1:19-cv-00642 (E.D. Va. May 24, 2019), ECF No. 1; Complaint, *Mayor and City Council of Baltimore v. Janssen Biotech, Inc. et al.*, No. 1:19-cv-00605-TSE-JFA (E.D. Va. May 16, 2019), ECF No. 1.  Defendants will also move to transfer these actions to the District of New Jersey on the same grounds.

New Jersey would help avoid inconsistent judgments concerning those patent issues. *See Bluestone Innovations, LLC*, 940 F. Supp. 2d at 319 (granting transfer where the "singular most important factor in this analysis" is that "trying these cases separately creates the serious risk of inconsistent results" where two courts would "be constructing the claims of the same Patent").

Moreover, this antitrust action and the recently transferred *qui tam* litigation share core legal and factual allegations. Both complaints allege that the Janssen Defendants secured the '438 Patent by failing to disclose the alleged "blocking patent," and by misrepresenting Zytiga's commercial success. Both complaints similarly allege that the Janssen Defendants used the '438 Patent to block generic competition and artificially inflate prices for Zytiga. *Compare* Compl. ¶ 8, *with* Amended Complaint, at 23, *United States of America et al. v. Janssen Biotech, Inc. et al.*, No: 2:19-cv-12107-KM-JBC (D.N.J. Oct. 23, 2018), ECF No. 7. Inconsistent procedural rulings or substantive findings relating to these issues could lead to disparate judgments on factually identical claims. Transfer of this case would avoid this potential outcome.

Lastly, basic notions of equity and fairness strongly support transferring this case to the District of New Jersey and specifically to Judge McNulty. To the extent that any federal district court will sit in judgment over whether the Patent Litigation was a sham, that decision ought to be entrusted in the first instance to Judge McNulty. He is in the best position to reflect on the litigation that played out in his courtroom over three years and bring to bear his own first-hand observations of the parties' legal arguments, factual representations, and motivations.

The relevant considerations clearly support a § 1404(a) transfer to New Jersey. Virginia has but a nominal nexus to this dispute, and litigating the case here does not promote any particular element of fairness. "Fairness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum

16

citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Jaffee v. LSI Corp.*, 874 F. Supp. 2d 499, 505 (E.D. Va. 2012).  While this Court often presents an attractive option for litigants seeking fast-track litigation, "the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner." *High Point SARL v. Sprint Nextel Corp.*, No. 2:08CV625, 2009 WL 10671368, at *9 (E.D. Va. May 18, 2009).  To that end, courts in this District have explicitly warned plaintiffs that the Eastern District of Virginia "cannot stand as a willing repository for cases which have no real nexus to this district."  *Id.*  Accordingly, the transfer of lawsuits that have "minimal connection[s] to the district," like this one, would advance the interest of justice by avoiding "unfairly slowing the cases for parties with genuine connections to this district."  *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996–97 (E.D. Va. 2011).  Here, non-resident Plaintiffs have identified no "genuine connections" to Virginia to overcome the strong grounds for transfer.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and transfer this case to the District of New Jersey.

Dated: May 24, 2019

Respectfully submitted,

/s/ Gordon D. Todd
Gordon D. Todd (VSB No. 45934)
gtodd@sidley.com
Kimberly Leaman (VSB No. 85925)
kimberly.leaman@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

John W. Treece (admitted *pro hac vice*)
jtreece@sidley.com
Steven J. Horowitz (admitted *pro hac vice*)
shorowitz@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036

*Attorneys for Janssen Biotech, Inc., Janssen Oncology,*
*Inc., and Janssen Research & Development, LLC*

/s/ Mark A. Ford
Mark A. Ford (admitted *pro hac vice*)
mark.ford@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Perry A. Lange (VSB #71184)
perry.lange@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202)-663-6363

*Attorneys for BTG International Limited*