# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

LOUISIANA HEALTH SERVICE & INDEMNITY
COMPANY D/B/A BLUE CROSS AND BLUE
SHIELD OF LOUISIANA, and HMO LOUISIANA,
INC., on behalf of themselves and all others
similarly situated,

      Plaintiffs,

           v.

JANSSEN BIOTECH, INC., JANSSEN
ONCOLOGY, INC., JANSSEN RESEARCH &
DEVELOPMENT, LLC, and BTG
INTERNATIONAL LIMITED,

      Defendants.

CIVIL ACTION NO. 1:19-cv-00474

# PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER

# <u>Table of Contents</u>

I.    Background ................................................................................................... 6

     A.    The defendants engaged in sham litigation beginning in 2015, alleging
infringement of a patent found invalid on five separate occasions. ................................... 6

     B.    The plaintiffs filed this antitrust action relating to the defendants' sham
litigation. ................................................................................................................................ 7

     C.    A *qui tam* action alleging fraud on the Patent and Trademark Office between
February 2011 and July 2013 by a non-party and the submission of false claims to the
U.S. government also exists…………. ............................................................................... 7


II.    DISCUSSION ................................................................................................ 8

     A.    The Zytiga purchasers' choice of forum is entitled to weight. .............................. 9

     B.    The convenience of witnesses and the parties does not weigh in favor of either
jurisdiction. ......................................................................................................................... 11

     C.    The interests of justice require that this case remain where it was filed. ............ 14


III.    Conclusion ................................................................................................... 17

# **Table of Authorities**

## **Cases**

*Allergan, Inc. v. Teva Pharmacueticals USA, Inc.*, case number 1829 in the Supreme Court..... 16

*Arabian v. Bowen*, 966 F.2d 1441, 1992 WL 154026, at *1 (4th Cir. July 7, 1992) ( unpublished table opinion) .................................................................................................... 8

*Board of Trs v. Sullivan Ave. Props, LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007) ................ 9

*BTG Int'l Ltd. v. Amneal Pharmaceuticals, LLC*, 923 F.3d 1063 (Fed. Cir. 2019)....................... 6

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 15-cv-21, 2015 WL 1800274, *2 (E.D. Va. Apr. 16, 2015) .................................................................................................... 8, 14

*Dickson Properties LLC v. Wells Fargo Bank, N.A.*, No. 16-cv-527, 2017 WL 3273380, *2 (W.D. Va. Aug. 1, 2017)............................................................................ 8, 9, 10, 14

*Fitzgibbon v. Radack*, 597 B.R. 836, 841 (E.D. Va. 2019) ......................................................... 12

*Heinz-Kettler GMBH & Co. v. Razor USA, LLC*, 750 F.Supp.2d 660, 667 (E.D. Va. 2010)……………………………………………………………………………8, 12, 10, 14

*Jones v. Frazier*, No. 09-cv-513, 2009 WL 2601255, at *8 (E.D. Va. Aug. 18, 2009).................. 8

*JTH Tax, Inc. v. Lee*, 482 F.Supp.2d 731, 736 (E.D. Va 2007)...................................................... 9

*Koh v. Microtek Int'l, Inc.*, 250 F.Supp.2d 627, 633 (E.D. Va. 2003)........................................... 9

*Medicenters of America, Inc. v. T & V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184 (E.D. Va. 1974) ........................................................................................................ 12

*Mitchell v. Norfolk Southern Railway,* 2015 WL 5285827 (W.D. Va. Sept. 8, 2015)…………… ...................................................................................................... 8, 9, 12, 13, 14

*NFR, LLC v. Corizon Health, Inc.*, No. 15-cv-367, 2015 WL 4902050, *1 (E.D. Va. Aug. 17, 2015) ................................................................................................... 8, 11, 13

*Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)....................................... 10

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)........................................................... 9

*Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015)............................................................................................. 9, 10

*U.S. v. National City Lines*, 334 U.S. 573, 581 (1948)...................................................... 5, 10, 11

*U.S.A. Laboratories, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 09-cv-47, 2009
    WL 1227867, *3 (E.D. Va. May 4, 2009) .............................................................. 13

*United States v. Scophony Corp. of Am.*, 333 U.S. 795, 804 (1948) ........................................... 10

*Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) ........................................................................ 9

*Virginia Innovation Sciences, Inc. v. Samsung Electronics, Co, Ltd.*, 928 F.Supp.2d 863, 871
    (E.D. Va. 2013)................................................................................................................ 12, 13

The federal antitrust laws include a specific section on jurisdiction and venue, expanding the forums available for antitrust claims beyond those where a defendant "resides or is found" in order to "provide broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust policy."[1] In enacting section 12 of the Clayton Act, the Supreme Court has stated, Congress recognized that the defendants to an antitrust action should not be allowed to select the forum for the claim. Rather, Congress "intended trial to take place in the district specified by the statute and selected by the plaintiff."[2]

The defendants here – Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC (collectively, Janssen) and BTG International Ltd (BTG) – seek to do precisely what Congress aimed to prevent: letting the defendants control the forum and dragging all antitrust actions to the defendant's home.

Further, the District of New Jersey is affirmatively telling litigants that it cannot meet the caseload before it, recently issuing orders in two long-standing pharmaceutical actions that because of the flood of cases and a shortage of judges, litigants in the District of New Jersey will now be forced to bear additional costs in the form of special masters to administer justice.

Deference to the plaintiffs' choice of forum, the realities of documentary and deposition discovery in modern litigation, and the interests of justice all counsel against transferring this action. The Court should deny the defendants' motion.

---

[1] *U.S. v. National City Lines*, 334 U.S. 573, 581 (1948).

[2] *Id*. at 582.

# I.   BACKGROUND

**A.   The defendants engaged in sham litigation beginning in 2015, alleging infringement of a patent found invalid on five separate occasions.**

In July 2015, the defendants began suing would-be competitors, alleging various potential manufacturers of generic versions of the prescription drug Zytiga were infringing United States Patent No. 8,822,438 (the '438 patent).[3] The cases were assigned to Judge McNulty in the District of New Jersey. Beginning in December 2015, various of the generic manufacturers filed petitions for *inter partes* review before the Patent Trial and Appeal Board (PTAB), located in the Eastern District of Virginia, challenging the validity of the '438 patent.[4]

In January 2018, the PTAB issued three separate decisions invalidating the '438 patent as obvious.[5] In October 2018, Judge McNulty issued an opinion also finding the '438 patent invalid as obvious.[6] The defendants appealed the three PTAB decisions and Judge McNulty's decision to the Federal Circuit. On May 14, 2019, the Federal Circuit issued its decision in the consolidated actions, affirming the PTAB's decision in one of the *inter partes* proceedings and dismissing all other appeals as moot.[7]

---

[3] *See generally*, Plaintiffs' complaint (Compl.); *see also* Complaint, *Janssen Biotech, Inc. et al. v. Mylan Pharmaceuticals, Inc.*, 15-cv-00130 [ECF #1] (N.D. W. Va. Aug 4, 2015) (similar case filed by Janssen in West Virginia).

[4] Compl., ¶¶ 170 (Amerigen filed on December 4, 2105); 180 (Argentum filed on June 29, 2016); 181 (Mylan filed on June 30, 2016, followed by a host of others including Wockhardt).

[5] Compl., ¶¶ 200-224.

[6] Compl., ¶¶ 225-237. While there was some overlap between the PTAB decisions and Judge McNulty's decision, they were not identical. For example, the PTAB, and ultimately the Federal Circuit, construed the relevant claim terms broadly, while Judge McNulty applied a more narrow construction.

[7] *BTG Int'l Ltd. v. Amneal Pharmaceuticals, LLC*, 923 F.3d 1063 (Fed. Cir. 2019).

**B.      The plaintiffs filed this antitrust action relating to the defendants' sham litigation.**

On April 18, 2019, purchasers of Zytiga filed the instant action, alleging the defendants engaged in and perpetuated sham litigation against would-be competitors in an effort to delay entry and sale of generic versions of Zytiga. The Zytiga purchasers, on behalf of themselves and all others that paid for or reimbursed the costs of the drug, assert claims under the federal Sherman Act and various state statutes for unlawful anticompetitive conduct and seek damages.

Three other identical cases by Zytiga purchasers alleging antitrust violations have since been filed; all four are pending in this district.[8]

**C.      A *qui tam* action alleging fraud on the Patent and Trademark Office between February 2011 and July 2013 by a non-party and the submission of false claims to the U.S. government also exists.**

In 2017, a relator filed a *qui tam* action in the Northern District of California, alleging that Johnson & Johnson (Janssen's parent) secured the '438 patent through fraudulent representations or omissions made to the Patent and Trademark Office (PTO) between February 2011 and July 2013.[9] After fraudulently securing the patent, the relator claims, Johnson & Johnson and others provided false pricing information and submitted false claims to the U.S. government for payment and/or reimbursement of Zytiga.[10] The *qui tam* action seeks recovery for the payment of those allegedly false claims.

---

[8] On May 31, 2019, the plaintiffs moved to consolidate the four end payor actions before this Court, as well as appoint an agreed-upon leadership structure. *See* ECF #35 (motion to consolidate); #37 (motion for appointment of interim class counsel). On June 3, 2019, the Court entered an order providing that all four action should be assigned to this Court. *See* ECF #40.

[9] *See, e.g.,* Exhibit A, Motion to Transfer, *United States ex rel. Silbersher v. Janssen Biotech, Inc.*, No. 17-cv-7250 [ECF #30], at 2 (N.D. Cal. Feb. 12, 2019) (Transf. Mot.) ("J&J secured that patent, Relator claims, through fraudulent representations or omissions to the [PTO] during patent prosecution.").

[10] Swindell Dec., ECF #32, ¶ 15.

The *qui tam* action, the defendants acknowledged in a recent filing, centers upon the conduct of "the party that 'filed' with the PTO the documents that underlie" the claims: Johnson & Johnson, a non-party to the instant action.[11] The alleged fraud occurred in 2011, 2012, and 2013, predating the filing and prosecution of the sham litigation at issue in the instant action.

On April 29, 2019, over the objections of the relator, Johnson & Johnson successfully petitioned for transfer of the *qui tam* action from the Northern District of California to the District of New Jersey.

## II.    DISCUSSION

Under 28 U.S.C. §1404(a), a district court may, for the convenience of parties and witnesses and in the interests of justice, transfer a case to a district where it may have been initially brought.[12] The defendants, as the party seeking transfer, bear the heavy burden of showing that the circumstances of the case strongly favor transfer.[13] It is a burden they have not shouldered.

---

[11] Transf. Mot., at 5

[12] *Dickson Properties LLC v. Wells Fargo Bank, N.A.*, No. 16-cv-527, 2017 WL 3273380, *2 (W.D. Va. Aug. 1, 2017) (quoting 28 U.S.C. §1404(a)); *Heinz-Kettler GMBH & Co. v. Razor USA, LLC*, 750 F.supp.2d 660, 667 (E.D. Va. 2010).  The Zytiga purchasers do not contest that this action may have been initially filed in many other districts, including New Jersey.

[13] *Dickson Properties* 2017 WL 3273380 at *2 (citations omitted); *Mitchell v. Norfolk Southern Railway Comp.*, No. 15-cv-00002 2015 WL 5285827, *2 (W.D. Va. Sept. 8, 2015) (party seeking transfer bears "heavy burden of showing that the balance of interests weighs strongly in [its] favor" (quoting *Arabian v. Bowen*, 966 F.2d 1441, 1992 WL 154026, at *1 (4th Cir. July 7, 1992) ( unpublished table opinion)); *NFR, LLC v. Corizon Health, Inc.*, No. 15-cv-367, 2015 WL 4902050, *1 (E.D. Va. Aug. 17, 2015) (party seeking transfer bears burden of proving "that the circumstances of the case are strongly in favor of transfer" (quoting *Jones v. Frazier*, No. 09-cv-513, 2009 WL 2601255, at *8 (E.D. Va. Aug. 18, 2009)); *Heinz-Kettler*, 750 F.Supp.2d at 667 (same); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 15-cv-21, 2015 WL 1800274, *2 (E.D. Va. Apr. 16, 2015) (same).

Section 1404(a) places "discretion in the district court to adjudicate motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"[14] Providing guidance to district courts, the Fourth Circuit has distilled these case-by-case considerations into four broad factors: (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.[15] These factors compel the denial of the defendants' motion.

## A.    The Zytiga purchasers' choice of forum is entitled to weight.

"The initial choice of forum, from among those possible under the law, is a privilege given to the plaintiff."[16] And "a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'"[17] Even when, as here, the chosen forum is not the plaintiff's home forum, that choice is still entitled to deference and should not be lightly disregarded by the court.[18] Indeed, even faced with out-of-state defendant corporations with no business ties to the forum state, the Fourth Circuit has found that a court need not transfer the

---

[14] *Dickson Properties* 2017 WL 3273380 at *2 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964))).  In exercising this discretion, the Court must still view all facts and allegations in the light most favorable to the party opposing transfer.  *Mitchell* 2015 WL 5285827 at *1 n.2.

[15] *Dickson Properties* 2017 WL 3273380 at *2 (citing *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015)).

[16] *JTH Tax, Inc. v. Lee*, 482 F.Supp.2d 731, 736 (E.D. Va 2007) (quoting *Koh v. Microtek Int'l, Inc.*, 250 F.Supp.2d 627, 633 (E.D. Va. 2003)).

[17] *Dickson Properties* 2017 WL 3273380 at *2 (quoting *Trustees of the Plumbers*, 791 F.3d at 444 (quoting *Board of Trs v. Sullivan Ave. Props, LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007).

[18] *Dickson Properties* 2017 WL 3273380 at *3.

case.[19]  And, in cases brought under statutes with a liberal venue provisions – as this case is – the plaintiff's choice of forum is given even greater weight.[20]

The federal antitrust laws contain explicit and broader jurisdiction and venue rules than those under the general federal venue statute. Section 12 of the Clayton Act provides that "any suit… under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business."[21] The Supreme Court has long recognized that in adopting section 12, Congress was concerned with "provid[ing] broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust policy."[22] As the Ninth Circuit reiterated, "[t]he legislative idea was that when a plaintiff has had business transactions with the defendant through which the defendant has injured him, the plaintiff should not be forced to follow the defendant into the defendant's home district…. The purpose of the Act is to allow the plaintiff, who has been hurt in his dealings with the defendant, to bring suit where the 'defendant had committed violations of the Act and inflicted the forbidden injuries.'"[23]

---

[19] *Trustees of the Plumbers*, 791 F.3d at 444. While no such allegations are made here, courts have even denied transfer even where they have found the plaintiff's choice of forum "suspicious." *Dickson Properties* 2017 WL 3273380 at *3 (questioning why plaintiff waited two years, while similar claims were pending in another jurisdiction, but finding that defendants' vague allegations of forum shopping failed to carry their burden).

[20] *Trustees of the Plumbers*, 791 F.3d at 444 (ERISA's liberal venue provision is evidence of Congress' intent to "give plaintiff's choice of forum somewhat greater weight than would typically be the case"); *see also National City Lines* , 334 U.S. at 586 (discussing Congressional intent in enacting Section 12 of the Clayton Act); *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 804 (1948) (Clayton Act contains broad venue provision).

[21] 15 U.S.C. § 22.

[22] *National City Lines*, 334 U.S. at 581 (discussing antitrust venue statute in the context of motion to dismiss for *forum non conveniens*).

[23] *Pac. Car & Foundry Co. v. Pence*, 403 F.3d 949, 954 (9th Cir. 1968) (citing *National City Lines*, 334 U.S. at 583).

The plaintiff's choice of forum for actions arising under the antitrust laws is due great deference. In adding the jurisdiction and venue rules to the Clayton Act, "Congress did not authorize plaintiffs to institute civil antitrust actions in the newly specified districts, merely in order to have them transferred back for trial to one of the districts comprehended by [section 7 of the Sherman Act]. It intended trial to take place in the district specified by the statute and selected by the plaintiff."[24] Indeed, the Court noted, "depriv[ing] the plaintiff of the choice given" by the Clayton Act's forum rule "would be utterly inconsistent with the purpose of Congress in conferring the broader range of choice."[25]

Here, the Zytiga purchasers' choice of forum should be respected. The broad venue provision provided by the Clayton Act, the nationwide sales of Zytiga, the substantial activities that took place before the PTAB in this district, and the purchasers' desire to achieve a prompt resolution all counsel in favor of keeping this case where it was filed.

The defendants have already succeeded in nullifying the *qui tam* plaintiff's choice of forum. They should not be allowed to do so here, again.

**B.** **The convenience of witnesses and the parties does not weigh in favor of either jurisdiction.**

Janssen claims a transfer to New Jersey would be more convenient "for the Janssen entities and for the Janssen employees who may potentially be called to testify in this action."[26] But convenience to the parties alone will rarely justify transfer.[27] And claimed inconvenience to

---

[24] *National City Lines*, 334 U.S. at 582.

[25] *Id*. at 588 (writing "In the face of this history we cannot say that room was left for judicial discretion to apply the doctrine of *forum non conveniens* so as to deprive the plaintiff of the choice given by the section. That result, as other courts have concluded, would be utterly inconsistent with the purpose of Congress in conferring the broader range of choice.").

[26] Swindell Dec., ECF #32, ¶43.

[27] *NFR, LLC*, 2015 WL 4902050 at *5.

party witnesses carries relatively little weight.[28] Rather, the defendants must prove "that the balance of convenience among the parties and witnesses is 'beyond dead center, and strongly favors the transfer sought.'"[29] And "transfer is not appropriate when it will merely serve to shift the balance of inconvenience from one side to another."[30]

For starters, in modern litigation, the physical location of documents is rarely a factor in determining convenience of the parties and witnesses.[31] Document discovery in this case will take place electronically, not in some document storage room at the defendants' headquarters.

And by its own admission, nothing about defendant BTG favors the District of New Jersey over the Eastern District of Virginia. BTG, located in the United Kingdom, has no connection to New Jersey.[32] Relevant documents in its possession are located in the United Kingdom, not New Jersey, as are witnesses with knowledge of the allegations in the complaint.[33] BTG, an "international biopharmaceutical company" is just as capable of defending this action in the Eastern District of Virginia as it would be in the District of New Jersey.

So that leaves only Janssen's claims of witness inconvenience. Janssen spills substantial ink explaining where its "compound development team leaders" are located.[34] But it spends no time explaining how events concerning "Zytiga's path to development," "pre-launch product"

---

[28] *Mitchell,* 2015 WL 5285827 at *4 (citations omitted); *Virginia Innovation Sciences, Inc. v. Samsung Electronics, Co, Ltd.*, 928 F.Supp.2d 863, 871 (E.D. Va. 2013).

[29] *Fitzgibbon v. Radack*, 597 B.R. 836, 841 (E.D. Va. 2019) (quoting *Medicenters of America, Inc. v. T & V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184 (E.D. Va. 1974).

[30] *Mitchell,*2015 WL 5285827 at *3 (citing *Heinz Kettler*, 750 F. Supp. 1d at 668).

[31] *Mitchell*, 2015 WL 5285827 at *3 (citations omitted).

[32] *See* Mussenden Aff., ECF #33., ¶¶4-5.

[33] *See* Mussenden Aff., ECF #33., ¶6.

[34] Swindell Dec., ECF #32, ¶¶18-23, 40.

strategy, "market evaluation and market-entry strategies for Zytiga," and "FDA's approval process" have any bearing on this case. Abiraterone was developed in the 1990s, and brought to market in 2011. The sham litigation at issue in this case was filed in 2015.

Similarly, the majority of the many other current employees identified by the defendants are in areas that will likely be of little relevance to this case (*i.e.,* Zytiga product support, Zytiga marketing and promotion, communication strategies concerning Zytiga).[35] Presumably, Janssen cites these witnesses as relevant to its "commercial success" argument. But the purchasers do not dispute the fact that Zytiga was and is commercially successful; the main issue in this case is whether the invention claimed in the '438 patent (found obvious and invalid by the PTAB, a district court, and the Federal Circuit) should have received patent protection in light of the blocking patent. Potential inconvenience to employees with little relevance to the issues presented by the plaintiff's claims is entitled to little weight.[36] To the extent that any of this information is tangentially relevant to this case, it is much more likely to take the form of documentary evidence than live testimony: this counsels against a transfer.[37]

As to Janssen's claim that in-house counsel was directing the sham litigation, their precise location is afforded little weight. Claimed inconvenience to party witness is rarely a major factor in transfer decisions.[38] And Andrea Kamage, currently Assistant Patent Counsel and

---

[35] Swindell Dec., ECF #32, ¶¶29-37.

[36] *See, e.g., U.S.A. Laboratories, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 09-cv-47, 2009 WL 1227867, *3 (E.D. Va. May 4, 2009) (court gives weight to potential inconvenience to witnesses whose testimony is central to a claim).

[37] *NFR, LLC,* 2015 WL 4902050 at *6 ("All of that relevant information would likely be available in documentary form in the files of Defendant. Therefore, this factor weighs in favor of Plaintiff.").

[38] *Mitchell,* 2015 WL 5285827 at *4 (citations omitted); *Virginia Innovation Sciences, Inc. v. Samsung Electronics, Co, Ltd.*, 928 F.Supp.2d 863, 871 (E.D. Va. 2013).

someone identified as playing a lead role in prosecuting the sham litigation, is located in La Jolla, California, not New Jersey.[39]

Finally, to the extent that testimony from any of the witnesses noted by Janssen is required in this case, it will almost certainly be done, as is customary in large-scale litigation, by deposition in a location convenient to the witness. Surely defense counsel (located in Chicago and Boston respectfully), who will have to travel to any deposition or any court hearing regardless of whether the case is in New Jersey or Virginia, cannot be heard to complain about convenience.

**C.     The interests of justice require that this case remain where it was filed.**

The "interests of justice" prong is broad, encompassing a wide range of case-specific factors.[40] This prong is aimed at ensuring "systematic integrity and fairness."[41] A primary consideration, and one that weighs heavily in favor of denying the defendants' motion, is the relative docket conditions of the courts.

Courts have denied transfer motions where the proposed transferee district is one that, on average, takes longer to resolve cases.[42] "When a plaintiff chooses a forum for purposes of fostering speedy and inexpensive litigation, this factor's weight should not be diminished in the overall balance."[43]

---

[39] Swindell Dec., ECF #32, ¶25.

[40] *Dickson Properties*, 2017 WL 3273380 at *3.

[41] *Mitchell*, 2015 WL 5285827 at *5 (citations omitted).

[42] *Heinz Kettler*, 750 F.Supp.2d at 670 (noting prospect of a speedier trial weighed in favor of keeping case in the Eastern District of Virginia).

[43] *Cobalt Boats*, 2015 WL 1800274 at *5 (noting Fed.R.Civ.P. 1).

In seeking to move the *qui tam* case from California, Janssen noted the heavier per-judge caseload in New Jersey as compared to the Northern District of California: at 1,348 cases per-judge, the District of New Jersey has more than double the 639 cases per-judge in the Northern District of California as of Sept. 30, 2018. Janssen and Johnson & Johnson conceded that this doubling of caseload weighed against transfer.[44] Here, the differences are much starker:

- During the 12-month period ending September 30, 2018, there were more than 22,000 civil cases filed in the District of New Jersey. Only 3,459, less than 1/6th that number, were filed in the Eastern District of Virginia.[45]
- As of December 31, 2018, the District of New Jersey had 24,972 cases pending. This amounted to an average of 1,469 per judgeship for each of its 17 judges. The median time from filing to trial of civil cases was just shy of 4 years: 47.2 months.
- By contrast, the Eastern District of Virginia had 3,380 cases pending as of December 31, 2018, for an average of 307 for each of its 11 judges. The median time from filing to trial for civil cases was 12.4 months.[46]

Recently, the judge handling two pharmaceutical antitrust cases pending in New Jersey entered memoranda indicating an intention to appoint special masters to handle discovery matters in the cases. In so doing, the judge noted the state of affairs in the District of New Jersey: "The required level of case management is untenable given the burdens on the District of New Jersey. As all are aware, the District of New Jersey currently has five judicial vacancies and will have a sixth vacancy in May 2019."[47] The original cases at issue, which are only in the early

---

[44] Order Granting Motion to Transfer Venue, *United States ex rel. Silbersher v. Janssen Biotech, Inc.*, No 17-cv-02750 [ECF #51], at 12 (N.D. Cal. Apr. 29, 2019) ("[A]s Defendants conceded, this factor weighs against transfer.").

[45] *See* https://www.uscourts.gov/sites/default/files/data_tables/jff_4.2_0930.2018.pdf, last visited May 24, 2019.

[46] *See* https://www.uscourts.gov/sites/default/files/fcms_na_distcomparison1231.2018.pdf, last visited May 24, 2019.

[47] Exhibit B, Memorandum, *In re Effexor XR Antitrust Litig.*, No. 11-cv-5479 [ECF #582] (D.N.J. Mar. 29, 2019); Exhibit C, Memorandum, *In re Lipitor Antitrust Litig.*, No. 12-cv-2389 [ECF #853] (D.N.J. Mar. 29, 2019).

stages of discovery, were both originally filed elsewhere, *in 2011 and 2012*, before being transferred to New Jersey.[48]

With five times the per-judge caseload in New Jersey compared to the Eastern District of Virginia and judges in New Jersey acknowledging to litigants that the district is overburdened, there can be no serious dispute as to which way this factor tilts.

The purchasers chose this forum because a substantial amount of the matters in the underlying cases played out before the PTAB, located in this district. They did not engage in forum shopping or attempt to avoid a hostile judge. Rather, the purchasers, as is their right, chose a forum with a connection to the facts and circumstances underlying the litigation where they believe they will achieve prompt and efficient resolution of their claims.

A court may also look to whether pending related actions exist and consider a desire to avoid potentially inconsistent rulings. While the *qui tam* action is pending at this time, the defendants there will soon be re-filing their motion to dismiss that case.[49] And the defendants

---

[48] The first *Effexor* case was filed in May 2011 in the Southern District of Mississippi, while the first *Lipitor* case was filed in 2011 in the District of Massachusetts.

[49] J&J had a motion to dismiss pending in the Northern District of California at the time the case was transferred to New Jersey, focused on false claim act issues (*i.e.,* the public disclosure bar and alleged failure to plead an actionable false claim). The parties recently filed a stipulation in New Jersey providing a schedule for a second amended *qui tam* complaint to be filed, to be followed by a renewed motion to dismiss. Having spoken to counsel for plaintiffs in the *qui tam* action, it is believed that the substantive theories of the *qui tam* action will not be changing.

Technically, the failed patent litigation may also be viewed as "pending" as the defendants' 90-day period to file a *writ of certiorari* to the United States Supreme Court has not yet expired. However, the well-reasoned opinion of the Federal Circuit, finding the '438 patent obvious (as had the PTAB and a district court judge) presents little chance that the Supreme Court would accept any such *writ*. Indeed, on June 3, 2019, the Supreme Court denied a *writ of certiorari* in a case specifically challenging the "blocking patent" doctrine. *See Allergan, Inc. v. Teva Pharmacueticals USA, Inc.*, case number 1829 in the Supreme Court.

here will be filing a motion to dismiss this case, raising arguments very different from those it will be presenting in New Jersey.

In the end, the *qui tam* case and the purchaser cases are not so related to warrant a transfer. The *qui tam* action and the purchaser actions involve different defendants and will focus on different facts, time periods, and theories of harm. To the extent there are some overlapping witnesses, counsel can coordinate on deposition scheduling. (Indeed, counsel for the *qui tam* plaintiffs and the purchaser plaintiffs are already in communication.) And document discovery can be coordinated as appropriate.

The defendants' contention that if "any court will be asked to declare that Judge McNulty wasted three years" it should be Judge McNulty himself[50] also misses the mark.  While Judge McNulty was undoubtedly correct in his conclusion that the '438 patent was invalid as obvious, the fact that the Federal Circuit invalidated the patent on grounds found by the PTAB, and under the broader claim construction adopted by the PTAB lessens any rationale for his necessary or continuing involvement.

### III.   CONCLUSION

For all of the foregoing reasons, the purchasers choice of forum should be respected, and this case (as well as the related end payor cases filed in this district) should remain in the Eastern District of Virginia.

Dated:  June 7, 2019                          Respectfully submitted,

/s/ William H. Monroe, Jr.
William H. Monroe, Jr. (VSB No. 27441)
Marc C. Greco (VSB No. 41496)

---

[50] Defs. Memo. pp. 1-2. The irony of this argument, juxtaposed against the defendants' strenuous argument, throughout the New Jersey case and appeal, that Judge McNulty was procedurally barred from even considering the validity of the patent in the first instance, is interesting.

Kip A. Harbison (VSB No. 38648)
Michael A. Glasser (VSB No. 17651)
William D. Moore, III (VSB No. 77097)
Anders T. Sleight (VSB No. 84458)
GLASSER AND GLASSER, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510
Telephone: (757) 625-6787
Facsimile: (757) 625-5959
bill@glasserlaw.com
marcg@glasserlaw.com
kip@glasserlaw.com
michael@glasserlaw.com
wmoore@glasserlaw.com
asleight@glasserlaw.com
*Local Counsel for Plaintiffs Louisiana Health
Service & Indemnity Company d/b/a Blue Cross and
Blue Shield of Louisiana, HMO Louisiana, Inc. and
the Proposed Class*

Thomas M. Sobol
Lauren G. Barnes
Gregory T. Arnold
Bradley J. Vettraino
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
lauren@hbsslaw.com
grega@hbsslaw.com
bradleyv@hbsslaw.com

James R. Dugan II (*pro hac vice* forthcoming)
David S. Scalia (*pro hac vice* forthcoming)
THE DUGAN LAW FIRM, LLC
One Canal Place, Suite 1000
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181
jdugan@dugan-lawfirm.com
dscalia@dugan-lawfirm.com

*Counsel for Plaintiffs Louisiana Health Service &
Indemnity Company d/b/a Blue Cross and Blue Shield
of Louisiana, HMO Louisiana, Inc. and the Proposed
Class*

Allison N. Pham
Jessica Chapman
Charles A. O'Brien
LOUISIANA HEALTH SERVICE & INDEMNITY
COMPANY, D/B/A BLUE CROSS AND BLUE
SHIELD OF
LOUISIANA
5525 Reitz Avenue
P.O. Box 98029
Baton Rouge, LA 70809
Telephone: (225) 295-2199
Facsimile: (225) 297-2760
*Counsel for Plaintiffs Louisiana Health Service &
Indemnity Company d/b/a Blue Cross and Blue Shield
of Louisiana, HMO Louisiana, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2019, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all

counsel of record who have made a formal appearance

Dated: June 7, 2019                          **/s/ William H. Monroe, Jr.**
                                             William H. Monroe, Jr. (VSB No. 27441)