**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS AND BLUE SHIELD OF LOUISIANA, and HMO LOUISIANA, INC., on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>         v.<br><br>JANSSEN BIOTECH, INC., JANSSEN ONCOLOGY, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, and BTG INTERNATIONAL LIMITED,<br><br>         Defendants. | Case No. 1:19-cv-00474-LMB-JFA |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE**
**UNDER 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 1

    A.   Plaintiffs' Choice of Forum Is Entitled To Little Deference. ......................... 2

    B.   The Convenience Of Witnesses Favors Transfer............................................ 6

    C.   The Convenience Of The Parties Favors Transfer.......................................... 8

    D.   The Interest of Justice Requires Transfer. ..................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Byerson v. Equifax Info. Servs., LLC*,
  467 F. Supp. 2d 627 (E.D. Va. 2006) ..................................................................4, 9

*Dickson Properties, LLC v. Wells Fargo Bank, N.A.*,
  No. 7:16-cv-527, 2017 WL 3273380 (W.D. Va. Aug. 1, 2017) ..................................4

*Finmeccanica S.p.A. v. Gen. Motors Corp.*,
  No. 1:07CV794 (JCC), 2007 WL 4143074 (E.D. Va. Nov. 19, 2007).........................5

*Fizgibbon v. Radack*,
  597 B.R. 836 (E.D. Va. 2019)..............................................................................6, 9

*Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*,
  No. 1:08CV1246GBL/TCB, 2009 WL 874513 (E.D. Va. Mar. 27, 2009)...................8

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
  71 F. Supp. 2d 517 (E.D. Va. 1999) .......................................................................10

*Int'l Show Car Ass'n v. Am. Soc'y. of Composers, Authors & Publishers*,
  806 F. Supp. 1308 (E.D. Mich. 1992)....................................................................3, 4

*In re Interior Molded Doors Antitrust Litig.*,
  No. 3:18-CV-00718-JAG, 2019 WL 1062382 (E.D. Va. Mar. 6, 2019) ....................4

*Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*,
  227 F. Supp. 2d 581 (E.D. Va. 2002) .......................................................................4

*Jaffe v. LSI Corp.*,
  874 F. Supp. 2d 499 (E.D. Va. 2012) ......................................................................10

*JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*,
  No. 95 CIV. 0437 (LAP), 1995 WL 293956 (S.D.N.Y. May 12, 1995) ....................4

*Koh v. Microtek Int'l, Inc.*,
  250 F. Supp. 2d 627 (E.D. Va. 2003) ...............................................................6, 7, 8

*Open Text S.A. v. Alfresco Software Ltd.*,
  No. 2:13CV320, 2013 WL 12175004 (E.D. Va. Oct. 11, 2013) .............................10

*Pac. Car & Foundry Co. v. Pence*,
  403 F.2d 949 (9th Cir. 1968) ..................................................................................3

*Penwest Dev. Corp. Ltd. v. Dow Chem. Co.*,
    667 F. Supp. 436 (E.D. Mich. 1987).....................................................................................3

*Samsung Elecs. Co. v. Rambus, Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) ..................................................................................7

*Seaman v. IAC/InterActiveCorp, Inc.*,
    No. 3:18-CV-401, 2019 WL 1474392 (E.D. Va. Apr. 3, 2019) ..........................................9

*Smeltzer v. S. Resorts, Inc.*,
    No. CIV.A. 87-145-N, 1987 WL 19933 (E.D. Va. Oct. 5, 1987)........................................8

*Trs. of Columbia Univ. v. Symantec Corp.*,
    No. 3:13-CV-808, 2014 WL 1329417 (E.D. Va. Apr. 2, 2014) ..........................................5

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
    791 F.3d 436 (4th Cir. 2015) ..............................................................................................2

*United States of America et al. v. Janssen Biotech, Inc. et al.*,
    No: 2:19-cv-12107-KM-JBC (D.N.J. Oct. 23, 2018) ........................................................11

*United States v. National City Lines, Inc.*,
    337 U.S. 78 (1949).........................................................................................................2, 3

*United States v. National City Lines, Inc.*,
    334 U.S. 573 (1948)............................................................................................................2

*Va. Innovation Scis., Inc. v. Samsung Elecs., Co.*,
    928 F. Supp. 2d 863 (E.D. Va. 2013) .................................................................................6

*Western Elec. Co., Inc. v. Piezo Tech., Inc.*,
    860 F.2d 428 (Fed. Cir. 1988).............................................................................................5

**Statute**

28 U.S.C. § 1404(a) ...................................................................................................2, 3, 4

**Other Authority**

U.S. Patent & Trademark Office, *Manual of Patent Examining Procedure*
    § 1701.01 (9th ed. rev. Jan. 2018)......................................................................................5

Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC (collectively, "Janssen" or "Janssen Defendants"), and Defendant BTG International Limited ("BTG" and collectively with Janssen, "Defendants"), respectfully submit this Reply in support of their Joint Motion to Transfer this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

Plaintiffs' Opposition to Defendants' Joint Motion to Transfer Venue ("Opposition" or "Opp.") offers little to justify keeping this case in this District. Indeed, Plaintiffs fail to identify any meaningful connection between their claims and this District, relying almost exclusively on what they suggest is a virtually unfettered right to choose venue as well as docket statistics that simply are not meaningful as applied to this particular case. Plaintiffs do not, and cannot, dispute that the locus of this case lies in New Jersey and that judicial economy would be best served by *not* having a second federal court revisit a series of complex patent issues, including a voluminous patent infringement case history. Because the Section 1404(a) factors overwhelmingly favor transfer, this Court should grant Defendants' motion.[1]

## ARGUMENT

Plaintiffs acknowledge that they could have filed their lawsuits in the District of New Jersey. Opp. at 8 n.12. The only remaining issue therefore is the weighing and application of the Section 1404(a) transfer factors: (1) plaintiff's choice of venue; (2) witness convenience and

---

[1] Since Defendants filed their joint motion, Plaintiffs filed a motion to consolidate this case with three other cases making similar allegations and claims filed by the Mayor and City Council of Baltimore (Case No. 1:19-cv-00605), Iron Workers District Council (Philadelphia and Vicinity) Health Benefit Plan (Case No. 1:19-cv-00642), and Kentucky Laborers District Council Health and Welfare Fund (Case No. 1:19-cv-00658). As requested in Defendants' joint response to that motion, Defendants ask the Court to consider their motion for transfer as well as this reply to be applicable to all four lawsuits pending before this Court.

1

access; (3) convenience of the parties; and (4) the interest of justice. *See Trs. of Plumbers & Pipefitters Nat'l. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). When the convenience of witnesses, convenience of the parties, and the interest of justice are weighed against the minimal deference afforded to the non-Virginian Plaintiffs' choice of forum, these factors overwhelmingly favor transfer.

## A. Plaintiffs' Choice of Forum Is Entitled To Little Deference.

Plaintiffs do not dispute that neither they nor the underlying facts of this case have any meaningful connection to this District. Instead, they rely almost exclusively on what they assert is their plenary right under the Clayton Act's broad venue and jurisdiction provision to dictate where this suit must be heard. *See* Opp. at 9–11. The law does not, however, guarantee Plaintiffs their choice of forum and, as explained in Defendants' opening paper, the well-established considerations for transfer under Section 1404(a) uniformly support transfer.

As an initial matter, the Clayton Act does not preclude transfer pursuant to 28 U.S.C. § 1404(a). Plaintiffs quote extensively from the Supreme Court's vintage decision in *United States v. National City Lines, Inc. ("National I")*, 334 U.S. 573, 583 (1948), holding that a district court lacks the discretion to refuse jurisdiction and dismiss an antitrust case pursuant to the doctrine of *forum non conveniens*. Not only do Plaintiffs misleadingly omit a case decided by the Supreme Court the following year, *after* the enactment of Section 1404, that confirms Section 1404(a) is applicable in the antitrust context, *United States v. National City Lines, Inc.* ("*National II*"), 337 U.S. 78 (1949), but Plaintiffs also vastly over-read *National I*. There, the Court recognized that the Clayton Act struck a balance between allowing plaintiffs to sue "in a district where by a course of conduct [defendants] had violated the Act with the resulting outlawed consequences," and preventing plaintiffs from "bring[ing] suit and forc[ing] trial in districts far removed from the places where the company was incorporated, had its headquarters, or carried on its business." *Pac.*

2

*Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (quoting *National I*, 334 U.S. at 588). As Plaintiffs recognize, "[t]he purpose of the Act is to allow the plaintiff, who has been hurt in his dealings with the 'defendant, to bring suit where the defendant had committed violations of the Act and inflicted the forbidden injuries.'" Opp. at 10 (quoting *Pac. Car*, 403 F.2d at 954). Here, none of the Plaintiffs in any of the four cases has alleged any harm or wrongdoing that took place in this District. To the contrary, this case better resembles *Pacific Car*, where the Court was "left … with a choice of forum supported only by the fact that it was chosen. Such a choice cannot prevail under § 1404(a) against the showing of inconvenience here made by the petitioner." 403 F.2d at 955.

In the years since, courts have recognized repeatedly and correctly that transfer of antitrust suits among districts is not foreclosed by the Clayton Act, but rather is controlled by the later-enacted provisions of 28 U.S.C. § 1404(a). *See National II*, 337 U.S. at 958; *see also Penwest Dev. Corp. Ltd. v. Dow Chem. Co.*, 667 F. Supp. 436, 437–38 (E.D. Mich. 1987) (noting *National II* "held that section 1404 permits the transfer of an antitrust action to a more appropriate forum, notwithstanding the Clayton Act's special venue provision."). Section 1404(a) authorizes the Court to transfer "*any* civil action to *any* other district" that meets the rule's requirements. Antitrust suits are not cloaked with special protections against transfer. *See Int'l Show Car Ass'n v. Am. Soc'y of Composers, Authors & Publishers*, 806 F. Supp. 1308, 1312 (E.D. Mich. 1992) ("[P]laintiff's choice of forum need not be given additional weight merely because plaintiff brings an antitrust claim against defendants."). "[A]lthough the liberal venue provisions of the Clayton Act afford plaintiff a broad range of choice as to the forum, the appropriateness of that choice must be measured by the standards of § 1404(a) which governs the transfer of an action properly brought." *Id.* (citing *McGuire v. Singer Co.*, 441 F. Supp. 210, 213 (D.V.I. 1977)); *see also In re*

*Interior Molded Doors Antitrust Litig.*, No. 3:18-CV-00718-JAG, 2019 WL 1062382, at *3 (E.D. Va. Mar. 6, 2019) (applying traditional transfer analysis to consolidated antitrust class actions when observing that courts "can disregard" plaintiff's choice of forum where it is not the home forum and the claims bear little or no relation to it); *JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*, No. 95 CIV. 0437 (LAP), 1995 WL 293956, at *2 (S.D.N.Y. May 12, 1995) (rejecting any higher standard required in order to transfer antitrust cases).

Here, Plaintiffs have chosen a "foreign forum, and the cause of action 'bears little or no relation to that forum.'" *Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002).[2]  Plaintiffs do not contest that they are not "at home" in the Eastern District of Virginia nor that as representatives of a putative class action their choice of forum is generally "afforded little weight." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006).  The additional three plaintiffs likewise hail from locations outside this District and the Commonwealth more broadly (Baltimore, Maryland; Philadelphia, Pennsylvania; and Kentucky) and have similarly failed to identify any distinct or unique connection—or indeed any connection—to the Eastern District of Virginia.

The *only* connection Plaintiffs note with this District—and even then, only in passing—is the presence of the Patent Trial and Appeal Board ("PTAB").  *See* Opp. at 16.  But any "substantial activities [that] took place before the [PTAB] in this district," Opp. at 11, such as the *inter partes* review petitions, are peripheral to Plaintiffs' claim that Defendants prosecuted a "sham" litigation

---

[2] Plaintiffs rely on *Dickson Properties, LLC v. Wells Fargo Bank, N.A.*, No. 7:16-cv-527, 2017 WL 3273380 (W.D. Va. Aug. 1, 2017), for the proposition that a foreign plaintiff is still entitled to deference in choice of forum, but that case presents a very different scenario.  There, the plaintiff brought suit in the Western District of Virginia, and defendants sought transfer to the *Eastern* District of Virginia, where it appears some of the conduct at issue occurred.  *Id.* at *3.  The Court found sufficient nexus to the Western District to allow the case to remain there.  *Id.*

4

in federal district court in New Jersey.  The *inter partes* review process, in which a manufacturer *defends* the validity of a patent against suing third parties, is an entirely distinct proceeding from a Hatch-Waxman patent infringement claim.  The mere presence of the PTAB cannot supply the necessary nexus with this District.

Tellingly, Plaintiffs offer no response to Defendants' showing that the presence of the U.S. Patent & Trademark Office ("PTO") is insufficient by itself to establish the appropriate connection to this District, as allowing such a basis would invite *all* patent-related cases to be heard by this District.  *See Trs. of Columbia Univ. v. Symantec Corp.*, No. 3:13-CV-808, 2014 WL 1329417, at *8 n.1 (E.D. Va. Apr. 2, 2014) ("The fact that the PTO is located in this district and that [defendant] filed documents with the PTO is insufficient to create a substantial connection to this forum."); *Finmeccanica S.p.A. v. Gen. Motors Corp.*, No. 1:07CV794 (JCC), 2007 WL 4143074, at *4 (E.D. Va. Nov. 19, 2007) ("Courts in this District have had no qualms about transferring patent cases to other jurisdictions despite the location of the USPTO.").[3]

Plaintiffs have identified no other connection to this District; rather, as they acknowledge, their lawsuit concerns the alleged "sham litigation" filed by Defendants *in the District of New Jersey*.  Opp. at 7–8.  Accordingly, New Jersey is the most appropriate forum this action not just because it is the center of Defendants' operations, but also because it is the site of the complained-

---

[3] In fact, the PTO prohibits PTO examiners from testifying in civil patent-related litigation.  *See* U.S. Patent & Trademark Office, *Manual of Patent Examining Procedure* § 1701.01 (9th ed. Rev. Jan. 2018) ("Patent examiners and other USPTO employees performing or assisting in the performance of quasi-judicial functions, are forbidden to testify as experts or to express opinions as to the validity of any patent.").  The Federal Circuit has also indicated that in most circumstances courts should not be in the habit of compelling examiner testimony.  *See Western Elec. Co., Inc. v. Piezo Tech., Inc.*, 860 F.2d 428 (Fed. Cir. 1988).  The PTO is simply not a source of relevant evidence or witnesses for this case making the PTO's presence in Virginia entirely irrelevant.

of conduct.  Plaintiffs' choice of forum merits little deference, and this factor does not weigh against transfer.

**B.  The Convenience Of Witnesses Favors Transfer.**

Even if Plaintiffs' choice of venue was given any weight, "[t]ransfer would still be appropriate upon a showing that 'the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought.'"  *Va. Innovation Scis., Inc. v. Samsung Elecs., Co.*, 928 F. Supp. 2d 863, 870 (E.D. Va. 2013).   Here, Defendants' motion and accompanying papers provided particularized information about potential party and nonparty witnesses and their potential testimony, explaining that nearly all such witnesses were located in or around New Jersey.  *See Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003); Declaration of Jerome A. Swindell In Support Of Defendants' Joint Motion To Transfer Venue ("Swindell Decl.").  Defendants' papers identified both potential party witnesses and non-party witnesses (*i.e.*, former employees), the latter of which whose convenience is afforded the highest priority.

Plaintiffs spend nearly three pages attacking the relevance of various New Jersey-based Janssen employees that have worked on the Zytiga product, claiming that the employees Defendants identified in their motion work "in areas that will likely be of little relevance to this case." Opp. at 13.  These arguments miss the mark.

As an initial matter, while Plaintiffs attack Defendants' detailed showing, the fact remains that Plaintiffs have not identified *a single witness* or other salient source of facts tied to the Eastern District of Virginia, nor described how *any* potential witness would be inconvenienced by a transfer to the District of New Jersey.  The silence is particularly deafening given that the convenience of witnesses is "of considerable importance" to this Court's analysis and "is often dispositive in transfer decisions."  *Fizgibbon v. Radack*, 597 B.R. 836, 843 (E.D. Va. 2019);

*Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005); *Koh*, 250 F. Supp. 2d at 636.

Moreover, Plaintiffs' hand-waving response is disingenuous at best.  Plaintiffs characterize Defendants' detailed account of potential witnesses and subject matters as relating only to "commercial success," which Plaintiffs dismiss as irrelevant to their claims.  Opp. at 13.  Such evidence certainly is relevant to whether and why Zytiga enjoyed commercial success, which in turn bears directly on whether Defendants had a good faith basis for disputing obviousness and pursuing Hatch-Waxman patent infringement litigation.  Moreover, as Plaintiffs' counsel well know, in cases alleging that a branded drug company has wrongfully impeded the entry of generic competition, plaintiffs routinely seek discovery into the branded company's sales and marketing plans and strategies, as well as financial projections, relating to generic entry, claiming that this discovery is relevant to the issues of intent to monopolize and damages.[4]

But regardless of what discovery Plaintiffs seek, Defendants' opening papers make clear that essentially *all* of the potentially relevant current and former Janssen employees and witnesses who have any knowledge of the development, marketing, pricing, patenting, generic entry, interactions with the PTO and FDA, and litigation over Zytiga are located in and around New Jersey.  *See generally* Defendants' Memorandum In Support Of Joint Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404(a).  And *none* are located in or around Virginia.

Lastly, Plaintiffs argue that discovery in this matter will be largely documentary (and electronic) and that depositions can be taken in a location convenient to the witness (which is New

---

[4] Plaintiffs also mischaracterize Defendants' discussion on Andrea Kamage, a potential party witness.  Defendants never said Ms. Kamage "play[ed] a lead role in prosecuting the sham litigation."  Opp. at 14.  Rather, Defendants noted she was the Senior Patent Counsel at Johnson & Johnson at the time of the June 4, 2013 patent prosecution submission and was located in New Brunswick, New Jersey.  Swindell Decl. ¶¶ 24–25.

Jersey for almost all of them).  This also misses the mark.  While electronic discovery has significantly mitigated the burdens of out-of-state discovery, it has not eliminated them, and there are almost always hard copy documents that must be unearthed and reviewed.  And, their non-binding assurances notwithstanding, Plaintiffs' lengthy factual recitations and ~150-page complaints foretell a need for a significant volume of depositions.  Lastly, Plaintiffs ignore that if this case is tried, the District Court in New Jersey will be significantly more convenient for the vast majority of witnesses than this District.  These considerations uniformly militate in favor of transfer.

In the final analysis, Defendants have demonstrated that almost all the relevant evidence, documentary and testimonial, lies in and around New Jersey, while none of it is in Virginia.[5] Plaintiffs have not identified any witness who would be inconvenienced by a transfer to New Jersey, nor any way in which transfer would disrupt the gathering of evidence or development of this case.  This factor strongly favors transfer.

### C.  The Convenience Of The Parties Favors Transfer.

The convenience of the parties likewise strongly favors transfer.  New Jersey is a far more convenient forum for Defendants, and Plaintiffs have not made any showing that they would be inconvenienced, let alone substantially so, by transfer.  *Koh*, 250 F. Supp. 2d at 636.[6]  As

---

[5] Plaintiffs confusingly discuss convenience for *counsel*, Opp. at 14, when the case law is clear that it is the convenience of witnesses, not counsel, which matters.  *See Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*, No. 1:08CV1246GBL/TCB, 2009 WL 874513, at *3 (E.D. Va. Mar. 27, 2009) ("In conducting this analysis, the Court does not consider convenience to counsel."); *Smeltzer v. S. Resorts, Inc.*, No. CIV.A. 87-145-N, 1987 WL 19933, at *3 (E.D. Va. Oct. 5, 1987) ("Convenience of counsel has no bearing on the issue of the convenience of the parties and witnesses, and is not a factor to be considered.").

[6] Indeed, Plaintiffs reference coordinating with counsel in the *qui tam* case on discovery.  Such coordination will be made far easier by a transfer to New Jersey where the *qui tam* case is presently pending.  *See infra* at 10–11.

Defendants demonstrated, and Plaintiffs do not dispute, Defendants have no material connection to Virginia and nearly all of the Janssen Defendants' relevant operations are located in or around New Jersey.

Conversely, Plaintiffs, located in Louisiana (and now Kentucky, Maryland, and Pennsylvania), will be litigating in a foreign forum regardless of whether the case is heard in this District or in New Jersey.  Plaintiffs have not otherwise identified a single connection to Virginia that renders this District any more convenient for them than New Jersey.  *See Seaman v. IAC/InterActiveCorp, Inc.*, No. 3:18-CV-401, 2019 WL 1474392, at *7 (E.D. Va. Apr. 3, 2019) (favoring transfer where plaintiff was not at home forum and did not identify any inconvenience by a transfer).  The balance of convenience is well "beyond dead center."  *Fitzgibbon*, 597 B.R. at 841; Opp. at 12.  This factor favors transfer.

### D.  The Interest of Justice Requires Transfer.

This final factor, which "may be decisive in ruling on a transfer motion," also strongly favors transferring this case to the District of New Jersey.  *Byerson*, 467 F. Supp. 2d at 635.

The efficiencies gained from transferring Plaintiffs' "sham litigation" suit to the court that hosted that litigation are obvious.  Judge McNulty presided over the infringement litigation for three years, including a nine-day bench trial that generated approximately 2,000 pages of trial transcript and 231 exhibits.  It would be the antithesis of judicial economy to insist that this Court revisit and digest that record to make judgments as to whether the overall lawsuit was so frivolous as to constitute a "sham."  Moreover, given Plaintiffs' fixation with the so-called blocking patent, the Court would also need to become familiar with a meaningful portion of the documents submitted during the prosecution of the '438 Patent, which total 711 records and 14,380 pages of

documents for both the '340 and '440 Applications.[7]  Regardless of the comparative caseload and time from filing-to-trial differences between the District of New Jersey and this District, *this* case can be much more efficiently adjudicated in the District of New Jersey and likely in far less time.

Plaintiffs' discussion of the relative burdens and speed of the two districts is an insufficient basis to defeat transfer.  Indeed, "if the EDVA's speed was afforded controlling weight in every venue transfer motion, cases better suited for resolution elsewhere would never make it out of the District."  *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 506 (E.D. Va. 2012); *see also GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 520 (E.D. Va. 1999) ("Docket conditions, although relevant, are a minor consideration when all other reasonable and logical factors would result in a transfer of venue.  If the rule were otherwise … [t]he result would be untenable and thus this can never be the rule.").  This Court has been explicit that the shorter median time from filing to trial for this District "is caused not by a lack of docket congestion, but by this Court's practice of resolving cases expeditiously."  *Open Text S.A. v. Alfresco Software Ltd.*, No. 2:13CV320, 2013 WL 12175004, at *5 (E.D. Va. Oct. 11, 2013).  And that "practice is no reason for this Court to become a magnet for cases that are more properly brought elsewhere."  *Id.*

Additionally, as Plaintiffs acknowledge, a court may "look to whether pending related actions exist and consider a desire to avoid potentially inconsistent rulings."  Opp. at 16.  As Plaintiffs concede, there are multiple pending related cases in the District of New Jersey.  Opp. at 16 n.49.  Judicial economy is best served by a transfer to avoid any potential inconsistent judgments between the patent infringement litigation and this matter, the latter of which is dependent upon the propriety of Defendants bringing the former.

---

[7] Per the Public Patent Application Information Retrievals ("PAIR") website, the public record for the '340 Application has 268 records and 1,953 pages of documents and the '440 Application has 443 records and 12,427 pages of documents.

And a second case is now pending with Judge McNulty in the District of New Jersey, after being transferred to that District from the Northern District of California.  Although Plaintiffs attempt to distance their factual allegations from those pled in the recently transferred *qui tam* action, Opp. at 7–8, 17, the similarities between the two actions are overwhelming.  Both complaints allege that the existence of the so-called "blocking patent" undermined any commercial success argument in support of the '438 Patent.  *Compare* Compl. ¶ 8, *with* Am. Compl., at 23, *United States of America et al. v. Janssen Biotech, Inc. et al.*, No: 2:19-cv-12107-KM-JBC (D.N.J. Oct. 23, 2018), ECF No. 7 ("D.N.J. Am. Compl.").  Both plead that the '438 Patent was obtained through misconduct before the PTO, and both allege Defendants pursued and participated in "sham" patent infringement litigation.  *Compare* Compl. ¶¶ 145–169, *with* D.N.J. Am. Compl. ¶¶ 67–93.  As Judge Tigar noted when transferring the *qui tam* action to New Jersey, Judge McNulty "is likely to be intimately familiar with the patent and its history" and "may draw upon his store of knowledge regarding the patent even if there are no further proceedings ongoing in that case." *See* Order Granting Motion To Transfer Venue at 11, *United States of America et al. v. Janssen Biotech, Inc. et al.*, No: 2:19-cv-12107-KM-JBC (D.N.J. Apr. 29, 2019), ECF No. 51.

Thus, even if the legal issues in the *qui tam* case are not exactly coextensive, the same considerations that led Judge Tigar to transfer the *qui tam* action to New Jersey counsel for a similar transfer here, which would avoid having two district courts conduct duplicative and separate proceedings over similar factual issues.  Thus, the interests of justice strongly favors transfer to New Jersey.

## CONCLUSION

The Section 1404(a) factors weigh heavily in favor of transfer, with three factors—witness convenience and access, convenience of the parties, and the interest of justice—greatly outweighing whatever minimal deference is due a foreign class action plaintiff's selection of a

forum that lacks any relation to the underlying facts of the case.  For the foregoing reasons, the Court should grant Defendants' Joint Motion to Transfer Venue.

DATE: June 13, 2019

Respectfully submitted,

/s/ Gordon D. Todd
Gordon D. Todd (VSB No. 45934)
gtodd@sidley.com
Kimberly Leaman (VSB No. 85925)
kimberly.leaman@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

John W. Treece (admitted *pro hac vice*)
jtreece@sidley.com
Steven J. Horowitz (admitted *pro hac vice*)
shorowitz@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036

*Attorneys for Janssen Biotech, Inc., Janssen Oncology,
Inc., and Janssen Research & Development, LLC*

/s/ Mark A. Ford
Mark A. Ford (admitted *pro hac vice*)
mark.ford@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Perry A. Lange (VSB #71184)
perry.lange@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202)-663-6363

*Attorneys for BTG International Limited*